UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL GUARDIAN LIFE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) 10 C 6241 ) |
| FREDONIA BEAN f/k/a Fredonia V. Washington, FLOR LUIS WASHINGTON, TAQIYYAHH ABDULLAH SHAKUR, a/k/a Diane Lynne Meals, all individuals, | ) ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on the motions of Defendant Fredonia Bean ("Fredonia") and Defendant Flor Luis Washington ("Flor") for summary judgment pursuant to Federal Rule of Civil Procedure 56 and the motions of Defendant Taqiyyah Abdullah Shakur ("Taqiyyah") to adopt the pleadings filed by Flor. For the reasons stated below, Fredonia's motion is denied and the motions of Flor and Taqiyyah are granted.

## **BACKGROUND**[1]

On December 13, 1985, Plaintiff National Guardian Life Insurance Company ("National Guardian") issued a Flexible Premium Adjustable Life Insurance Policy (the

---

[1] Unless otherwise noted, the following facts are undisputed for purposes of summary judgment.

"Policy") to Eddie P. Washington ("Eddie") with a value of $100,000 (the "Proceeds") to be paid to the specified beneficiary or beneficiaries upon Eddie's death. Under the Policy, Eddie had the right to change the beneficiary and identify two or more persons as direct beneficiaries by providing "notice to" National Guardian. If Eddie identified two or more persons as direct beneficiaries, National Guardian would pay the Proceeds in equal shares unless Eddie directed National Guardian to pay the Proceeds in a different method by providing "notice to" National Guardian. The Policy did not specify whether Eddie needed to state the amount payable to each beneficiary as a percentage or a dollar amount. The Policy defined "notice to" National Guardian as a "[w]ritten request or notice received at [National Guardian's] Home Office in a form which meets [its] needs." As stated in the Policy, such changes would "take effect on the date [the notice] was signed or the date specified in the notice."

According to the beneficiary designation signed by Eddie on December 10, 1985, the Proceeds would be split equally between his son, Elias Toure Washington ("Elias"), and daughter, Asiah Simoan Washington ("Asiah"). On January 12, 1987, Eddie changed the beneficiary designation (the "First Amendment") so that the first $30,000 of the Proceeds would go to Gloria Presley, Eddie's friend, and the balance of the Proceeds would go to Elias and Asiah in equal shares. National Guardian approved the First Amendment on January 13, 1987. On August 24, 1987, Eddie again changed the

beneficiary designation (the "Second Amendment") so that Fredonia, Eddie's wife at the time, was the sole direct beneficiary, and Elias and Asiah were contingent beneficiaries. National Guardian approved the Second Amendment on September 14, 1987.

On June 18, 2001, Eddie submitted a Policy Service Request (the "Request") form to National Guardian to change the beneficiary designation for a third time, so that: (1) Flor, his wife at the time of his death, would receive $40,000; (2) Fredonia, his ex-wife, would receive $40,000; and (3) Taqiyyah, his friend, would receive $20,000. Eddie's Request directed National Guardian to pay a specified dollar amount to each beneficiary. The form did not direct Eddie to designate the amount payable as either a dollar amount or percentage of the Proceeds. National Guardian received the Request and, on June 25, 2001, National Guardian sent Eddie a letter informing him that it was unable to process the Request because the beneficiary amount designations needed to be listed as percentages rather than dollar amounts. National Guardian enclosed a new Policy Service Request form with the letter and asked Eddie to return the completed form. National Guardian never received a new form with the beneficiary amount designations listed as percentages. According to Flor, who lived with Eddie during June

of 2001 and opened all incoming mail addressed to Eddie, she never opened or saw the June 25 letter from National Guardian.[2]

On June 5, 2010, Eddie died. On June 16, 2010, National Guardian sent a letter to Flor explaining that Fredonia, Eddie's ex-wife, was listed as the beneficiary of the Policy. Notwithstanding the letter from National Guardian, on June 28, 2010, Flor sent National Guardian a Claim for Benefits requesting payment of her

portion of the Proceeds. Flor included a statement with the letter requesting that National Guardian honor the Request and include her as a partial beneficiary to the Policy. On July 2, 2010, National Guardian responded by letter explaining that it could not change the beneficiary of the Policy and that, on June 25, 2001, it sent forms to Eddie to correctly change the beneficiary and did not receive those forms back. On August 12, 2010, Fredonia also submitted a Claim for Benefits requesting payment of the Proceeds of the Policy. On August 24, 2010, National Guardian sent separate letters ("Consent Letters") to Fredonia, Flor, and Taqiyyah stating that it had received multiple claims to the Proceeds and that if each person agreed to honor the Request, National Guardian would consider the claim settled and would not be liable for any further payment on the Policy. The Consent Letters requested that each recipient provide her consent to honor the beneficiary designations in the Request by signing and returning

---

[2] While the parties dispute whether Eddie received the June 25 letter from National Guardian, resolution of this fact is unnecessary to resolve the parties' summary judgment motions.

the Consent Letter to National Guardian. Flor and Taqiyyah returned signed copies of the Consent Letters to National Guardian. On August 29, 2010, Fredonia sent a letter to National Guardian stating that she did not consent to the terms of the Consent Letter and that she is the sole beneficiary of the Policy.

On September 29, 2010, National Guardian filed a complaint in interpleader against Fredonia, Flor, and Taqiyyah because National Guardian possesses the Proceeds which are due and owing to one or more of the Defendants. National Guardian claims no benefit or interest in the Proceeds. On April 22, 2011, Fredonia and Flor filed cross-motions for summary judgment. Taqiyyah subsequently moved to adopt the pleadings filed by Flor, which this Court allows.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Protective Life Ins. Co. v. Hansen*, 632 F.3d 388, 391-92 (7th Cir. 2011). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party. *Van Antwerp v. City of Peoria, Illinois*, 627 F.3d 295, 297 (7th Cir. 2010). When faced with cross-motions for summary judgment, the court "construe[s] all inferences in favor of the party against whom the motion under consideration is

made." *Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355, 359 (7th Cir. 2011).

## DISCUSSION

The key issue in this case is whether the Request, executed by Eddie on June 18, 2001, effectively changed the beneficiary of the Policy. Flor and Taqiyyah argue that Eddie's Request was effective because Eddie strictly complied with the Policy's method for changing the beneficiary and, alternatively, Eddie substantially complied with the Policy. Fredonia assumes that Eddie failed to strictly comply with the Policy and only argues that Eddie's Request was ineffective because Eddie did not substantially comply with the Policy.

Under Illinois law,[3] the interpretation of an insurance policy is a question of law that is properly decided on summary judgment. *Twenhafel v. State Auto Prop. & Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. Ill. 2009); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993). If an insurance policy prescribes a method for changing beneficiaries, that method is exclusive and a change by any other means is generally ineffective. *Sternitzke v. Pruco Life Ins. Co.*, 64 F.App'x 582, 583 (7th Cir. 2003) (citing *John Alden Life Ins. Co. v. Propp*, 627 N.E.2d 703, 706 (Ill. App. Ct. 1994)). Courts, however, have provided equitable relief from

---

[3] In interpleader actions where the parties are diverse, the court applies the law of the forum state. *Conn. Gen. Life Ins. Co. v. Gulley*, 668 F.2d 325, 326-27 n.1 (7th Cir. 1982).

strict adherence to a policy's terms if the insured substantially complied with the policy. *Sternitzke*, 64 F.App'x at 584 (citing *Propp*, 627 N.E.2d at 706).

Under the Policy, Eddie had the right to change the beneficiary, identify two or more persons as direct beneficiaries, and direct National Guardian to pay a certain portion of the Proceeds to each beneficiary by providing "notice to" National Guardian. The Policy defines "notice to" as a "[w]ritten request or notice received at [National Guardian's] Home Office in a form which meets [its] needs."[4] Notably, neither the Policy nor the Request form expressly required Eddie to specify the amount payable to each beneficiary as a percentage rather than a dollar amount. When attempting to change the beneficiary on June 18, 2001, Eddie completed, signed, and dated the correct form and sent the form to National Guardian, thereby providing "notice to" National Guardian of the change of beneficiaries and the amount payable to each beneficiary. Even though National Guardian treated the Request as ineffective because Eddie specified the amounts payable as dollar amounts rather than percentages, neither the Policy nor the Request form required Eddie to specify percentages. Eddie strictly complied with the Policy's terms for changing the beneficiary and specifying the

---

[4] The phrase "which meets its needs" is ambiguous because it is susceptible to more than one meaning. The phrase "which meets its needs" could either mean a notice to the insurer which states the change the insured would like to make or a notice which satisfies any and all criteria imposed by the insurer at any time. Ambiguity is strictly construed against the insurer. *Yunker v. Farmers Auto. Mgmt. Corp.*, 935 N.E.2d 630, 635 (Ill. App. Ct. 2010). Accordingly, this Court construes the phrase "which meets its needs" to mean a notice which states the insured's desired change.

amount payable to each beneficiary. Further, while National Guardian claimed it was unable to process Eddie's Request, the change took effect, as stated in the Policy, on the date the notice was signed, June 18, 2001. Because Eddie strictly complied with the Policy's terms, this Court need not analyze Eddie's Request and actions under the substantial compliance doctrine.

According to Eddie's Request, National Guardian must distribute the Proceeds as follows: $40,000 to Flor; $40,000 to Fredonia; and $20,000 to Taqiyyah. If the Proceeds are not precisely $100,000,[5] this Court finds that Eddie intended to give forty percent (40%) to Flor, forty percent (40%) to Fredonia, and twenty percent (20%) to Taqiyyah.

As a final matter, Flor has violated Federal Rule of Civil Procedure 5.2 by filing un-redacted exhibits which include social security numbers and full dates of birth. This Court orders the Clerk to remove docket number 27-2 from CM/ECF and orders Flor to re-file redacted exhibits complying with Rule 5.2 within 30 days from the date of this ruling.

---

[5] In its complaint, National Guardian alleged that the amounts payable must be stated as percentages rather than dollar amounts in case the policy yields proceeds in an amount different from the stated policy amount.

## CONCLUSION

For the foregoing reasons, this Court denies Fredonia's motion for summary judgment and grants Flor's and Taqiyyah's motion for summary judgment. Further, this Court orders the Clerk to remove docket number 27-2 from CM/ECF and orders Flor to re-file redacted exhibits complying with Rule 5.2 within 30 days from the date of this ruling.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated: June 9, 2011